[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Eula Pendarvis brings this claim against Scott Harrison doing business as Harrison Roofing Company for money damages in four counts: breach of contract, unjust enrichment, violation of Conn. Gen. Stat. § 42-110b (Connecticut Unfair Trade Practices Act: "CUTPA"), and intentional infliction of emotional distress. The defendant denies these allegations and interposes a special defense of the running of the statute of limitations as to each count as well as a special defense of laches to the unjust enrichment count. Moreover the defendant has filed a counterclaim alleging that he was never paid in full for the work that he did for the plaintiff and seeking money damages for the balance he claims is due.
The plaintiff originally brought an action by service on January 28, 1998, against an entity alleged in the first complaint to be Harrison Roofing Company, a corporation, for failure to properly perform a contract to repair the roof of her home. No such corporation existed, however, and none of the documents exchanged between the plaintiff and the defendant refer to any corporate entity. Rather the documents all indicate that the defendant is a sole proprietor running a business. So the plaintiff cited in the current defendant by service on April 22, 2000.
The pleadings were closed and the matter tried to the court. The court finds the following to be the underlying events. The plaintiff contacted CT Page 3302 the defendant in March of 1995 because as early as 1994 she knew she needed major roof repair. It was an old roof and water was leaking into the interior of the dwelling in many places. The plaintiff had obtained other inspections and estimates before that of the defendant but the prices quoted to her were all too high for her budget.
The best method of replacing a roof is to remove all roofing material and put down new plywood with a new layer of shingles on top of that. At the time of the defendant's inspection and estimate to the plaintiff, the wooden roof surface had one layer of cedar shingles and two layers of asphalt shingles over the cedar. Applicable building codes allow only two layers of shingles, not three or more. In addition, nails or other fasteners do not hold shingles well through more than two layers. The defendant examined the roof and told the plaintiff that he could not merely patch the roof to correct her leaks but that she needed the entire roof replaced. This was not something that the plaintiff felt she could afford. The defendant then proposed a less costly alternative that he hoped would take care of the problem. He proposed taking off the top two layers of asphalt shingles, leaving the old cedar layer, and affixing a new layer of asphalt shingles atop the cedar. This would still be in compliance with building code requirements and was likely, but not guaranteed, to fix the leaks.
The plaintiff and the defendant signed a contract agreeing to this work for a price of $6650, on which the plaintiff paid a $2000 deposit. The contract provided that any alteration or deviation in the work specifications that involved an extra cost would only be undertaken "upon written orders, and will be an extra charge over and above the estimate." The contract is dated March 23, 1995. Within the week the defendant began preparations for the repairs, hiring a carting company to deliver a dumpster to the residence and purchasing necessary roofing materials for the job.
The defendant promptly started the job along with an assistant. The first part of the job — the left side of the roof — was uneventful and went as planned. On or about March 31, 1995, the defendant began work on the right side of the roof, which consisted of two dormer-style sections, instead of a roof on one plane. The defendant removed the two layers of asphalt shingles and discovered that the base layer of cedar shingles was completely rotten. Under the rotten cedar shingles were old-fashioned wood laths, now with gaps between them, instead of modern wood panels. It was impossible to accomplish the repair to this part of the roof as the parties had originally contemplated. Not only that, a section of the incompetent roof was now exposed, in certain places all the way through to the interior of the structure, and needed to be covered in some weatherproof way immediately. CT Page 3303
In this emergency circumstance, the defendant, while on the job, called the plaintiff at her place of work and explained the problem. The plaintiff told the defendant to do it the way they had agreed in the contract. He told her that that was impossible and that speedy measures needed to be taken to deal with this new problem. But the plaintiff stated that she had no present ability to pay for any extra charges. The plaintiff and the defendant then orally agreed to modify the contract. For the original contract price the defendant was to completely re-roof the front dormer section on which he was then working. The parties agreed that the defendant would not undertake any work on the back dormer section at that point. The plaintiff said she might be able to afford that work later in the year.
Pursuant to this contract modification, the defendant immediately purchased seventeen sheets of four by eight plywood and many extra pounds of galvanized nails, none of which had been contemplated under the original contract. The plaintiff made a second progress payment of $1500 on the day after the defendant purchased the plywood, a fact which further supports the contention of the defendant that the plaintiff agreed to this oral change order. The defendant promptly did all of the additional work necessary to remove the cedar shingles and any useless lath, dispose of those materials, put down a new, up-to-code layer of plywood, and cover the new plywood with the layer of asphalt shingles. He then cleaned up and left the site.
Thereafter he attempted to have the plaintiff pay the remaining balance of the contract price — $3150 — as the parties had agreed, but the plaintiff refused to pay him. Although the defendant placed a mechanic's lien on the property in 1995, he allowed it to expire without enforcing his lienor's rights. And there he thought the matter rested until the plaintiff's lawsuit.
This controversy arose in April 3rd or 4th of 1995 once the defendant had completed the work he believed he was obligated to perform, and demanded and was refused payment. The controversy is pursuant to a written contract accompanied by an oral change order. The action served on January 28, 1998, was insufficient to confer upon this court personal jurisdiction over the proper defendant. Rather the defendant Scott Harrison, doing business as Harrison Roofing Company, was first sued in his personal capacity when he was served with the citation on April 22, 2000, summoning him to appear in this action, five years after the controversy arose.
The issue of the applicable statute of limitations, the subject of the special defense to each count raised by the defendant, need be reached if CT Page 3304 the plaintiff has first proved her case in chief. Only then would the trier of fact be required to determine whether the defendant has proved that the statute of limitations bars the plaintiff's claims.
The court finds that the plaintiff has failed to prove that the defendant breached their contract. Finding it impossible to go forward with the work as required by the original contract, the parties agreed to an appropriate oral modification, one that was fair to both parties under the circumstances. The plaintiff agreed to allow the defendant to substitute substantial additional work on the right front dormer-style section of the roof for the work originally intended to be done to the right rear section, all without increasing the contract price. The defendant fully performed the work as agreed. The defendant did not breach the contract. He was not unjustly enriched in any way. In fact, the plaintiff never paid the defendant the full contract price so that there was no "enrichment" of the defendant at all, and probably barely compensation to cover his costs. There was no immoral, unethical, oppressive, or unscrupulous conduct of any kind by the defendant so that there is no violation of CUTPA. Rather than leaving the homeowner in the lurch when the extent of the roofs deterioration became apparent, the defendant acted professionally and creatively in proposing a fair and workable solution to the problem. Finally the plaintiff has utterly failed to offer any evidence that would support a claim of intentional infliction of emotional distress.
The court finds that the plaintiff has failed to sustain her burden of proof regarding any of the counts in her complaint. Therefore the court need not consider the special defenses raised by the defendant.
There remains the defendant's counterclaim, however. The defendant alleges that the plaintiff breached their contract by failing to fully pay the contract price. In the second count of the counterclaim, the defendant alleges that the plaintiff has been unjustly enriched because he performed services the value of which the parties agreed was $6650, and she only paid him $3500. As to each count the plaintiff has responded only with a denial, pleading no special defenses. The plaintiff has not raised the statute of limitations as a bar to the defendant's claims, and so the court will not consider it.
The court finds that the defendant has proved that the plaintiff breached the contract. Moreover the court finds, in the alternative, that even if the defendant had failed to prove the existence of the modified contract, he has proved all of the elements of unjust enrichment, the plaintiff now continuing to retain, by her own admission without any problems on those sections of the roof completed by the defendant, the benefits of the defendant's work without paying full value for them. CT Page 3305
The court finds for the defendant on all counts of the plaintiff's complaint. The court finds for the defendant Scott Harrison on both counts of the counterclaim against the plaintiff Eula Pendarvis and awards the sum of $3150 to the defendant.
Patty Jenkins Pittman, Judge